568 P.2d 209

**Mary R. WEISS, Plaintiff (Employee) Appellant,**

**v.**

**HANES MANUFACTURING COMPANY, Defendant (Employer),**

**and**

**Hartford Insurance Company through General Adjustment Bureau, Defendant (Employer's Compensation Carrier), Appellees.**

**No. 2820.**

Court of Appeals of New Mexico.

July 19, 1977.

Writ of Certiorari Denied Aug. 23, 1977.

Anthony F. Avallone, Las Cruces, for plaintiff-appellant.

Edward E. Triviz, Las Cruces, for defendants-appellees.

## OPINION

SUTIN, Judge.

After 17 months had passed from the date of the hearing, the trial judge rendered a decision in favor of plaintiff. Four and one-half months later, the trial judge, from a review of his notes and the pleadings, changed his mind and entered a decision and judgment in favor of defendants and dismissed plaintiff's complaint with prejudice. Plaintiff appeals and we reverse.

We repeat, as we have noted on many occasions, that the proceedings which occurred in the court below and the briefs filed on appeal, are a sad reflection of a search for justice in the trial and appeal of civil cases.

The record shows the following dates and events surrounding the change of course in the trial court.

(1) On November 25, *1974,* the court heard all the evidence adduced at trial.

(2) On December 3, *1974,* plaintiff filed requested findings and conclusions. On December 17, *1974,* defendants filed requested findings and conclusions.

(3) On April 22, *1976,* 17 months after the evidence was heard, the trial court signed its decision in favor of plaintiff, which decision consisted verbatim of plaintiff's requested findings and conclusions.

(4) On June 24, *1976,* the court *filed* its decision in favor of plaintiff. The record is silent on the cause of the delay and the reasons therefor. Plaintiff submitted a form of judgment, but it was left unsigned.

(5) On June 30, *1976,* defendants filed a motion to vacate the decision and requested the trial court to find the facts and conclusions pertinent to the case, and moved alternately, for a new trial. On the same day, defendant filed a memorandum of 22 pages consisting of exceptions, testimony, references to depositions, correspondence between the court and counsel, comments, arguments and court decisions.

(6) On July 24, *1976,* argument was held on defendants' motion.

(7) On September 2, *1976,* the court wrote to opposing attorneys that he went back over all of his notes and the pleadings and found that his decision made April 22, 1976, and filed June 24, 1976, was incorrect and did not follow the facts in the case; that the decision was vacated, held for naught, and that a new decision was mailed to opposing attorneys.

(8) On September 3, *1976,* 21½ months after the evidence was heard, the court filed its decision in favor of defendants, which decision consisted verbatim of defendants' requested findings and conclusions.

(9) On *November 12, 1976,* plaintiff filed a notice of appeal *"to be effective on the date the judgment is actually filed."* [Emphasis added.]

(10) On December 2, *1976,* 20 days later, judgment was entered that dismissed plaintiff's complaint with prejudice.

A. *Plaintiff's notice of appeal was timely.*

Defendants note a jurisdictional question. They think it is questionable whether the notice of appeal given by plaintiff was sufficient to lift this case up from the district court. The assistance given this Court on this issue by opposing attorneys adds up to nothing.

The record shows that on *September 3, 1976,* the trial court rendered its decision.

About September 22, 1976, a judgment was presented to plaintiff by defendants for signature but it was returned to defendants unsigned. Plaintiff had no knowledge if or when the judgment would be filed. It was not filed by November 12, 1976. We believe that due to unusual and inexcusably long delays which had occurred previously, plaintiff, in order to protect her rights, did on *November 12, 1976*, file a *premature* notice of appeal *"to be effective on the date the judgment is actually filed"*, and served a copy thereof on defendants. The judgment was filed on *December 2, 1976*, three months after the decision was rendered. No notice of appeal was thereafter filed.

Pursuant to Rules 3(a)(1) and 4(a) of the Rules Governing Appeals [§§ 21–12–3(a)(1) and 21–12–4(a), N.M.S.A. 1953 (Repl. Vol. 4, 1975 Supp.)], a notice of appeal must be filed with the clerk of the district court within 30 days *after* entry of any final judgment.

The validity of plaintiff's notice of appeal, as worded, filed before entry of the final judgment, is a matter of first impression.

A history of this subject matter over the last 50 years discloses many variables. In *1925*, beginning with *D. M. Miller & Co. v. Slease*, 30 N.M. 469, 238 P. 828 (1925), the rule was established that until judgment was entered, there could be no appeal. In *1948*, the Supreme Court adopted the view that its rules would be liberally construed to the end that causes brought to the Supreme Court for review would be heard on the merits if possible. *Fairchild v. United Service Corporation*, 52 N.M. 289, 197 P.2d 875 (1948).

In *1961*, when a notice of appeal was late in filing by two days, jurisdiction of the case in the Supreme Court vanished, *Driver-Miller Corporation v. Liberty*, 69 N.M. 259, 365 P.2d 910 (1961), but where the filing of the notice was one day late, caused by mailing a presumption of its receipt on time by the district clerk saved the appellant. *Adams v. Tatsch*, 68 N.M. 446, 362 P.2d 984 (1961).

In *1964*, the Supreme Court adopted the liberal doctrine that the formalistic rigorism of the past had faded away so that thereafter, when any notice *defective* in form is filed in time *after* judgment that gives the opposing party notice of intention to appeal from the judgment rendered, no prejudice arises, and the notice is sufficient. *Johnson v. Johnson*, 74 N.M. 567, 396 P.2d 181 (1964). Thereafter, various *defects* in the form of notice filed in time were held sufficient. *Nevarez v. State Armory Board*, 84 N.M. 262, 502 P.2d 287 (1972); *Spurlin v. Paul Brown Agency, Inc.*, 80 N.M. 306, 454 P.2d 963 (1969); *Baker v. Sojka*, 74 N.M. 587, 396 P.2d 195 (1964); *Westbrook v. Lea General Hospital*, 85 N.M. 191, 510 P.2d 515 (Ct.App. 1973). But where the notice does *not* designate the judgment, order or part thereof appealed, it is insufficient. *State ex rel. Norvell v. Credit Bur. of Albuquerque, Inc.*, 85 N.M. 521, 514 P.2d 40 (1973).

*In 1966 and 1967*, the Supreme Court held that when a notice of appeal is *prematurely* filed before the entry of judgment, jurisdiction also vanishes and the appeal is dismissed. *Bouldin v. Bruce M. Bernard, Inc.*, 78 N.M. 188, 429 P.2d 647 (1967); *Curbello v. Vaughn*, 76 N.M. 687, 417 P.2d 881 (1966).

For other variables of significance, see *Marquez v. Wylie*, 78 N.M. 544, 434 P.2d 69 (1967); *Varney v. Taylor*, 79 N.M. 652, 448 P.2d 164 (1968); *Mabrey v. Mobil Oil Corporation*, 84 N.M. 272, 502 P.2d 297 (Ct.App. 1972).

The above collection of cases are not set forth to encourage attorneys to file defective notices of appeal, nor are the various defective forms delineated. They represent a guideline for those attorneys who are delinquent in the protection of their client's right to appeal.

Attorneys who handle appeals must conform to the Supreme Court rules within the "liberal" concepts attached to them, or their clients will suffer the pangs of outrageous misfortune. Negligence, mistake or misapprehension is no excuse.

This warning could be made applicable to the instant case, but because of the trend

toward a liberal view that began 30 years ago, we have decided to "liberally" construe this notice of appeal to protect the plaintiff. By this decision, we do not approve the filing of this type of notice under normal circumstances.

We know of no statute or procedural rule that requires notice of the actual entry of the judgment. In the instant case, the record does not show that plaintiff was notified if and when the judgment would be filed of record. Due to the prior delays that occurred, plaintiff had good cause to believe that the time for signing and filing the judgment would be indefinite in time, and that plaintiff would not be notified of the date that the judgment would be filed. To avoid gambling her rights of appeal, plaintiff filed and served a notice of appeal prematurely, but made the notice effective as of the date the judgment was actually filed. We believe the plaintiff was justified in doing so. By a transmutation of the language used, we hold that the notice of appeal was actually filed as of December 2, 1976, the date that the judgment was filed.

The notice of appeal was timely.

B. *The uncertainty of the judgment rendered demands a new trial.*

■ This case took on the form of a chameleon, very changeable, shifting in hue, according to the objectives presented to the court at different times.

From a review of the evidence, there are two issues of fact upon which the solution to this case depends. Did defendants have actual knowledge of the accident and injury as required by § 59–10–13.4(B), N.M.S.A. 1953 (2d Repl. Vol. 9, pt. 1)? Did plaintiff establish that her disability was the natural and direct result of the accident as a medical probability as required by § 59–10–13.3?

Defendants seek to affirm the judgment below because plaintiff's brief in chief failed to properly challenge the court's findings, and failed to present the matter of plaintiff's requested findings. We are often confronted with serious defects in briefs filed in this Court. We have already noted that both briefs filed are a sad reflection of

those services necessary to assist this Court. Because of the reasons for reversing this case, we abandon any discussion of defendant's criticism of plaintiff's brief.

The facts show that on March 20, 1974, plaintiff was employed as a material handler. Boxes of women's hosiery were sent out to her from the printing department on a small roller or dollie vehicle called a "truck." Her duty was to take the boxes off the truck and put them on the shelves. There was a stack of 20 boxes and to put them on the top shelves, she had to stand on a stool. While putting boxes on the top shelves, the boxes started falling and she stepped backward and almost fell off the stool She dropped the boxes and got hold of the divider of the shelf and swung around. She hit herself against the shelves, and was "grabbing to the table" and twisted her back. Mary Green, a checker, noted that plaintiff "caught my table", and made her sit down. Plaintiff was in pain.

Plaintiff testified that she told Rudy Burciaga, her superior, about the accident and injury. Burciaga testified that plaintiff told him she had pain and didn't feel right, and he told her to go to the employer's nurse or go home. We infer from this that plaintiff did not tell Burciaga that her pain was a result of the accident.

The determination of defendants' actual knowledge of the accident depends upon whom the judge would believe. The inexcusable delay of 17 months and 21½ months, respectively, in making his determination for plaintiff and defendants, after the evidence was heard, hindered and impeded a fair determination of this issue. By petition to the Supreme Court, either of the opposing attorneys could have obtained a peremptory writ of mandamus. Section 21–12–12, N.M.S.A. 1953 (Repl. Vol. 4, 1975 Supp.); *State ex rel. United Nuclear Corp. v. Montoya*, 76 N.M. 500, 416 P.2d 380 (1966). Both opposing attorneys sat idly by and waited, even though plaintiff must have anxiously awaited a decision of the trial court to determine her right to compensation. We have no sympathy for both

opposing attorneys who let this case sleep in their files.

Neither can we rely on the memory of the court. We do not know what notes were kept by the court that originally led to a decision for the plaintiff and then months later for the defendants. "Memory" is uncertain 21½ months later when "memory" is restricted to a recollection of the veracity of witnesses who testified and a remembrance of the evidence heard during trial. Many duties, affairs, events, occurrences and interests have intervened during the interim period. The certainty of memory begins to fade with the passage of time. Decisions based on memory are as uncertain as the testimony of witnesses who seek to recollect the facts of an event that occurred two years ago. Refreshment of memory by a court might take on the color of certainty if the testimony were read. If not read, experience teaches that a decision based upon memory alone is poor judgment and should be avoided.

Medical evidence was presented on plaintiff's disability as the natural and direct result of the accident as a medical probability under § 59–10–13.3.

Medical testimony consisted of the depositions of Dr. Mario Palafox, an orthopedic surgeon, Dr. Edmundo A. Kauffmann, a neurosurgeon, Dr. Carlos Arazoza, an orthopedic surgeon, and Dr. William J. Nelson, a neurosurgeon, all of El Paso, Texas.

There is sufficient evidence that, as a reasonable medical probability, plaintiff's disability was caused by the accident that occurred on March 20, 1974. However, the medical testimony can be construed to the contrary.

The doctors agreed that plaintiff's compensatory injury could have been caused by plaintiff coughing, sneezing, or performing housework and similar activity. The medical testimony created an issue of fact for the court.

Under the circumstances of this case, the symbolic terms of "equity and fair play" demand a retrial of the issues in conformity with the purposes of the Workmen's Compensation Act. The uncertainty of the judgment entered in this case cannot stand.

This case is reversed and remanded for a new trial.

IT IS SO ORDERED.

LOPEZ, J., and KASE, District Judge, specially concurring.

KASE, District Judge, (specially concurring).

I concur in the result. I also concur in the opinion, except that I do so on the following additional ground not articulated in the opinion.

The trial court filed two separate decisions in this case. In its initial decision filed on June 24, 1976 the court held in favor of the plaintiff. In its subsequent decision filed on September 3, 1976 the court held in favor of the defendants. Both decisions consist verbatim of the requested findings and conclusions of the prevailing parties. This practice has been denounced by the New Mexico Supreme Court in *Mora v. Martinez*, 80 N.M. 88, 451 P.2d 992 (1969). The court's mechanical adoption of the requested findings and conclusions of the prevailing parties in both decisions raises a serious question as to whether the court exercised the required independent judgment in determining this case.

This ground, coupled with the grounds contained in the opinion, require that this case be reversed and remanded for a new trial.